## Henry Hackemack and Raythe Nagel v. Anton Wiebrock.

1. REFORMATION—*Of Promissory Notes—Mistakes of Law.*—Where in the execution of a promissory note there is a mutual though differing mistake of the law, but a like knowledge of the facts and a like intent to have the note as it is, it will not be reformed in equity but must have its actual legal effect.

2. DECREES—*A Mistake Held to Furnish no Ground for Complaint.* —The decree in a foreclosure suit found that the defendants were per-

Hackemack v. Wiebrock.

sonally liable on "said note described in said mortgage," though the only note produced in evidence or claimed to be the ground of their liability was materially different from that described in the mortgage. *Held*, from a consideration of other language in the decree and the circumstances in evidence, that the phrase was inadvertently used that the note intended was the note introduced in evidence under the bill, and that the mistake furnished no ground for complaint.

**Bill,** to foreclose a mortgage and cross-bill to correct a note. Appeal from the Circuit Court of Hancock County; the Hon. CHARLES J. SCHO-FIELD, Judge, presiding. Heard in this court at the May term, 1896. Affirmed. Opinion filed June 16, 1897.

D. MACK & SON, attorneys for appellants.

SHARP & BERRY BROTHERS, attorneys for appellee.

MR. JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

Appellee filed his bill herein against the Eagle Butter and Cheese Company and appellants, to foreclose a mortgage for $1,500, which was executed by the company as party of the first part and after reciting the indebtedness to appellee, party of the second part, as " secured to be paid by its one certain promissory note of even date herewith for said sum of $1,500, payable to the said party of the second part, one year after date," and describing the mortgaged premises, further sets forth that it was given in accordance with the resolution of the directors, of December 1, 1892, as follows : " Resolved, that in accordance with a resolution of the stockholders, the president and secretary of this company borrow the sum of $1,500, on one year's time, and that they execute note and mortgage on the real estate of the company to secure the same, at a rate of interest not exceeding six per cent, and that they attach the seal of said company to said note and mortgage."

The following is a copy of the note, also filed as an exhibit with the bill:

" $1,500.                                    DECEMBER 3, 1892.

One year after date we promise to pay to the order of

Anton Wierbrock fifteen hundred dollars at six per cent interest, value received.

                                   HENRY HACKEMACK, Pres.
                                   RAYTHE NAGEL, Sec'y."

None of the original defendants appearing, a decree was entered on default and bill taken as confessed, but afterward set aside on motion and affidavit of appellants, who thereupon filed their answer denying their individual liability for the mortgage debt, and also a cross-bill to reform the note so as to make it the note of the company. Issues being made up on the bill and cross-bill, they were referred to the master to take and report the proofs and his conclusions therefrom; and on final hearing upon the pleadings and report a decree was entered finding, among other things, that the allegations of the cross-bill were not supported, and that the complainants therein were and each of them was personally liable on the "said note described in said mortgage," and ordering that in default of payment of the mortgage debt within the time limited therefor, the premises should be sold, and for any deficiency of the proceeds to be reported by the master, execution for the amount should go against the appellants individually, and dismissing the cross-bill. From that decree the complainants in said cross-bill, Hackemack & Nagel, took this appeal.

Upon the record here the only question is one of fact on the allegations of the cross-bill that appellee agreed to lend the money to the company upon its note and mortgage security only, that all the parties intended the note in question to be and understood it was the note of the company, and that the mistake, by which it was made that of appellant's individually, was the mistake of the scrivener who drew it, which were denied by appellee's answer. Upon that issue the burden of proof was upon appellants.

The creamery and appurtenant land, which are the mortgaged premises, are situate at or near Sutter, in Hancock county. Appellee—a farmer residing in the neighborhood—is a German, who understands the English language imperfectly, and is over eighty-five years of age.

While Hackemack went alone to Carthage, where the mortgaged was prepared by counsel, Nagel went to see appellee about making the loan; and it is admitted that in the interview on that occasion the old man expressed a decided unwillingness to lend the money to the company without security in addition to its mortgage, and no understanding appears to have been then reached. Upon the return of Hackemack, however, appellants and appellee went together to Tioga to have the mortgage acknowledged before I. L. Weiler, a notary public, residing there. When the instrument was produced appellee asked " where are your wives ? " showing his ignorance of the character of the proposed transaction. Appellants attempted to explain that it was a mortgage of the corporation, and sufficiently executed by them as president and secretary without their wives. When he came to understand that he told them he was an old man and had no use for the creamery; that he would not lend his money upon that security alone, but that he knew them and they were good enough. They then told him that all the stockholders would be liable as well as the company in its corporate capacity; that they were stockholders of the company, and named a half dozen others who were stockholders, with some, if not all, of whom and their pecuniary responsibility he was acquainted. Seeming slow to understand their meaning as expressed in English they got the notary to explain it in German, which he says he fully did, and also thus expressed his own idea of the law as in accord with theirs. Appellee again said, in substance, that with appellants on the note, together with the company's mortgage he would be satisfied, but as we understand the testimony he did not agree or intend to accept the company's note and mortgage alone. Whatever may seem to be the conflict between particular expressions of the parties in the course of the talk, as a whole it leaves upon our minds a clear impression that while appellants intended the note to be a company note, and supposed the appellee so understood, he expected and intended it to be, and understood it was such as would bind them and each of them personally. The

mistake in the form of it as drawn was a mistake, not of fact, but of law. The notary testified that he was directed by appellants to make it accord with the mortgage, and supposed he did so by putting the abbreviations "Pres. and "Sec'y," respectively, where they appear. His understanding of the law was that these made it a note of the company. Appellants, with full knowledge of what he had done, accepted and signed it as just what they intended, but with the belief that as a note it bound only the company, though they also would be personally liable as stockholders. Appellee received it as just what he intended, but with the belief that as a note it bound both the company and the appellants. He could hardly have failed to understand from the clear and repeated statements of appellants and the notary that they supposed every stockholder would be individually liable as such for the debt of the company, whether they so signed the note or not, but he was confident that however that might be appellants would certainly be so liable on the note as signed, and with that he was satisfied. Otherwise he would not have made the loan. Thus there was a mutual though differing mistake of the law, but a like knowledge of the fact, and a like intent to have the note as it was. It must therefore have its actual legal effect.

Evidence was introduced to impeach appellee and his son by showing statements by them out of court inconsistent with their testimony, but like the master we think it of little importance, since the conclusions of fact as above stated, and found by the master and the court, seem to be sustained by that of appellants themselves and of the notary, as well as of appellee and his son.

Much is said also of the finding recited in the decree, that appellants were personally liable on "said note described in said mortgage," though the only note produced in evidence or claimed to be the ground of their liability herein, is not such as is described in the mortgage, but in law is materially different.

The bill alleged the indebtedness as of the company and the appellants, and that to evidence and secure it appellants

made and delivered the note, a copy of which is filed there-with as an exhibit, and the company who executed the mort-gage also made an exhibit.  On making the order setting aside the decree first entered by default of all the defendants and letting in the appellants here to answer and file their cross-bill, they stipulated in open court that they would make no objection to the jurisdiction of the court to render a decree against them for any balance due on said mortgage and note after the application of the proceeds of the sale, provided the proof taken should show they were personally liable, and they should be permitted to offer on the hearing before the master any evidence tending to show that in equity they were not "liable to pay said note, or to reform said note on account of mistake in the form, substance or execution thereof," the meaning of which we fail to per-ceive unless it was that they would take no appeal from a personal decree against them for the balance mentioned.

But whatever may have been intended by it the phrase quoted was inadvertently used, and the note intended was the note set forth as an exhibit and introduced in evidence under the bill, as is manifest from other language in the decree and the circumstances shown.  No other appears in the case.  The master found and reported that "the note in question" is the individual note of appellants; that the mortgage was executed to "secure the payment of said note;" that "it was drafted before the note was given, but was present and considered, and also signed and acknowl-edged at the time the note was made."  The court approved the report, and in another part of the decree, in speaking of appellants, used the language "whom the court finds are personally liable for the debt secured by the said mortgage."

The money was loaned on the security of the two instru-ments, and the decree gives them no more or other than their proper effect.  It will therefore be affirmed.